UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TERRY COUSINS,

              Plaintiff,

    v.

KITSAP COUNTY, NED NEWLIN and
KITSAP COUNTY SHERIFF
DEPARTMENT,

              Defendants.

CASE NO. 3:08-CV-05764-KLS

ORDER GRANTING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT IN PART
AND DENYING IN PART

On February 5, 2010, the undersigned entered an order which granted the Defendants'
Motion for Summary Judgment and dismissed all of plaintiff's claims.  ECF. No. 19.  On
February 18, 2010 the Plaintiff filed a Motion for Reconsideration (ECF No. 20) which the
undersigned subsequently granted.

Ms. Cousins asserts four claims for relief in her Complaint.  They include (I) Title VII
discrimination based on gender, (II) interference with Plaintiff's First Amendment right of
freedom of speech and redress of grievance against government, (III) retaliation for whistle
blower activity and (IV) retaliation for filing an EEOC claim.

1    In their summary judgment motion, the defendants assert that the Plaintiff's claims of

2    interference with her First Amendment rights (Claim II) and retaliation for whistle blower

3    activity (Claim III) are now barred by the doctrine of collateral estoppel.  They also assert that

4    there are no material issues of fact regarding the claim of Title VII gender discrimination (Claim

5    I) and retaliation for filing an EEOCV claim (Claim IV) and that they are entitled to judgment as

6    a matter of law.

7        Having reviewed the pleadings filed in support of and in opposition to the motion, the

8    undersigned finds, for the reasons set forth below, that the Defendants' motion for summary

9    judgment should be granted in part and denied in part.  More specifically, all of Plaintiff's claims

10   are dismissed with the exception of her Claim I as it relates to gender discrimination and the

11   failure to promote in March 2008.

12                           **SUMMARY JUDGMENT STANDARD**

13       Summary judgment is proper where "the pleadings, depositions, answers to

14   interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

15   genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

16   of law."  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986).  The

17   Court must draw all reasonable inferences in favor of the non-moving party.  *See F.D.I.C. v.*

18   *O'Melveny & Meyers,* 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds,* 512 U.S. 79

19   (1994).  The moving party has the burden of demonstrating the absence of a genuine issue of fact

20   for trial.  *See Anderson,* 477 U.S. at 257.  Mere disagreement, or the bald assertion that a genuine

21   issue of material fact exists, no longer precludes the use of summary judgment.  *See California*

22   *Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.

23   1987).

24

1   Genuine factual issues are those for which the evidence is such that "a reasonable jury

2   could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248.  Material facts are

3   those which might affect the outcome of the suit under governing law.  *See id.*  In ruling on

4   summary judgment, a court does not weigh evidence to determine the truth of the matter, but

5   "only determine[s] whether there is a genuine issue for trial."  *Crane v. Conoco, Inc.,* 41 F.3d

6   547, 549 (9th Cir. 1994)(citing *O'Melveny & Meyers,* 969 F.2d at 747).  Furthermore, conclusory

7   or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary

8   judgment.  *Anheuser-Busch, Inc. v. Natural Beverage Distributors,* 60 F.3d 337, 345 (9th Cir.

9   1995).  Similarly, hearsay evidence may not be considered in deciding whether material facts are

10  at issue in summary judgment motions.  *Id. at 345; Blair Foods, Inc. v. Ranchers Cotton Oil,* 610

11  F.2d 665, 667 (9th Cir. 1980).

12  **CLAIM I.  Title VII Discrimination on the Basis of Gender**

13  Ms. Cousins has been an employee of the Corrections Division of the Kitsap County

14  Sheriff's Office since August 25, 1994.  She was promoted to Corrections Sergeant on July 21,

15  2003 and held that rank until she self-demoted on March 13, 2006.

16  Sometime in late 2007 the County announced an opening for Corrections Lieutenant.

17  Ms. Cousins submitted her application and was notified that she met the qualifications for the

18  position.  The plaintiff, along with two other candidates, participated in testing, conducted by

19  JMF & Associates.  The plaintiff's score was 69.01% which placed her third among the three

20  candidates.  The first two had scores of 79.34% and 79.16%.  Ms. Cousins interviewed for the

21  position but was not offered the promotion.  In fact, the Corrections Lieutenant position was not

22  filled at that time.  ECF No. 14-2, p. 7.

23  According to Ms. Cousins, on March 3, 2008, Chief Ned Newlin informed her that she

24  would not have an interview for the Lieutenant position as he was only bringing in the male out-

1  of-state applicant for an interview.  ECF No. 21, p. 5.  Ms. Cousins complained to unnamed

2  department supervisors regarding Chief Newlin's statement, which Ms. Cousins considered to be

3  sex discrimination.  On March 7, 2008 she received a call from Lieutenant Earl Smith of the

4  Sheriff's Department to schedule an interview for the Lieutenant position.  While Ms. Cousins

5  was concerned that the interview would be what she calls a "sham interview," she did attend the

6  interview on March 18, 2008.  While at the interview Chief Simpson asked Chief Newlin if they

7  had any of Ms. Cousins' evaluations or a resume to review.  Chief Newlin advised the panel they

8  did not have to have any of those documents because Ms. Cousins' had been employed with the

9  County for years and they were not needed.  ECR No. 21, p. 6.  Following the interview Ms.

10  Cousins waited in the hallway while those who conducted the interview conferred.

11  Approximately ten minutes later she was called back into the room and was informed that she

12  would not be offered the position as she was not what they were looking for.  *Id.* at p. 7.

13       The Corrections Lieutenant position as not filled following the first posting.  Ms.

14  Cousins' offers hearsay as to what may have happened with regard to the male applicant but

15  there are no facts before the court as to whether the position was or was not offered to him.

16  There are also no facts before the court regarding the reason the second qualified applicant, also

17  a woman, did not participate in the final interview.

18       The County created a second register for the same Lieutenant position in July 2008 and

19  Ms. Cousins again applied.  This time her test score of 77.70% ranked her second among the

20  three candidates.  The position was not offered to Ms. Cousins.  Instead, it was offered to Ms.

21  Genie Elton, who ranked first with a score of 84.10%, who was hired on August 11, 2008.  ECF

22  No. 14-2, p.7.

23       Ms. Cousins alleges that she was discriminated against due to her gender when she was

24  not selected for promotion to the Lieutenant position.  In order to establish a *prima* facie case of

1   discrimination based on failure to promote, Ms. Cousins' must show that (1) she belongs to a

2   protected class of persons, (2) she was qualified for the position to which she wished to be

3   promoted, (3) she was denied a promotion to that position, and (4) the job went to someone

4   outside the protected class (*Coughlan v. Amer. Seafoods, Co.,* 413 F.3d 1090, 1094 (9th cir.

5   2005)) or after her rejection, the position remained open and the employer continued to seek

6   applications from persons with comparable qualifications (*Cordova v. State Farm Insurance*

7   *Companies*, 124 F.3d ll45, 1148 (9th Cir. 1997)).

8       In this case, Ms. Cousins' had two opportunities to apply for the promotion to

9   Corrections Lieutenant.   For purposes of this summary judgment motion, there is no dispute that

10   Ms. Cousins meets the three elements of a *prima facie* case.  The Defendants assert that she

11   cannot meet the fourth element as the job eventually was given to another woman.

12       With regard to the second promotional opportunity, the Defendants are correct that Ms.

13   Cousins cannot make out a prima facie case of discrimination.  The position was offered to

14   another woman and that woman was clearly not outside the protected class.  The Defendants'

15   motion to dismiss that portion of Ms. Cousins claim regarding Title VII gender discrimination is

16   therefore **GRANTED.**

17       However, with regard to her first application for promotion, Ms. Cousins has made out a

18   *prima facie* case.  She belongs to a protected class, she applied for and was qualified for the job

19   or she would not have been interviewed, she was rejected for the position **and** the position

20   remained open and the employer continued to seek applications from persons with comparable

21   qualifications. *Cordova, supra,* at p. 1148.  The Court is mindful of the fact that the position

22   "closed" without it being filled.  However, it was not long after the position closed that the

23   County again posted an opening for the very same position of Corrections Lieutenant.

24

1    In addition, "[a] plaintiff can also establish a prima facie case of disparate treatment

2  without satisfying the *McDonnell Douglas* test, if she provides evidence suggesting that the

3  'employment decision was based on a discriminatory criterion illegal under the [Civil Rights]

4  Act.' *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 358, 97 S. Ct.

5  1843, 1866, 52 L. Ed.2d 396 (1977)." *Cordova, supra,* at p. 1148-1149.  In this case, Ms.

6  Cousins has offered direct evidence of such discriminatory animus:  Sheriff Newlin's statement

7  that Ms. Cousins would not have an interview as he was only bringing in the male out-of-state

8  applicant for an interview.  This statement is sufficient to create an inference of discriminatory

9  motive.

10    The undersigned concludes that Ms. Cousins has established a *prima facie* case of

11  discrimination by satisfying the four-part *McDonnell Douglas* test, and alternatively, by

12  providing direct and circumstantial evidence of discriminatory intent.  Therefore, the

13  Defendants' motion to dismiss this portion of the Plaintiff's Title VII employment discrimination

14  claim is **DENIED.**

15

16    **CLAIM II.  Interference with Right to Free Speech and**
     **CLAIM III.  Retaliation for Whistleblower Activity**

17

18    The defendants assert the affirmative defense of collateral estoppel based on two Final

19  Decisions and Orders issued by two separate Administrative Law Judges (ALJ) (ECF  No. 14-2)

20  whose decisions necessarily decided issues presented in this litigation.

21    These two claims revolve around an incident that occurred on August 26, 2005 when Ms.

22  Cousins, along with a number of other correctional officers, participated as volunteers in a

23

24

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
IN PART AND DENYING IN PART        6

1   charity event called "Shop with a Cop."[1]  The participants included then Sgt. Jeff Taylor, Lt.

2   Roxanne Payne, and Officers Penny Harrell and Tiffany Gay.  None of these officers were on

3   duty or in uniform during this event.  Sgt. Taylor had his personal travel trailer at the event

4   which was being used as an office.  At some time during that day and while in the trailer, Mr.

5   Taylor pointed a handgun directly at Sgt. Cousins.  He had also pointed the handgun at the

6   teenage son of Officer Harrell and had the gun resting on a table pointing in their direction when

7   Officer Gay and Lt. Payne entered on separate occasions.

8          Ms. Cousins reported this incident to Lt. Payne later that day.  On Monday, August 29,

9   2005 the County received several reports of the incident and, as a result, opened an internal

10  investigation, which was conducted by Sgt. Jim McDonough.  A criminal investigation was also

11  conducted, and during that time, the internal investigation was put on hold.  On October 24, 2005

12  the Kitsap County Prosecutor decided not to file any charges against Sgt. Taylor.  The prosecutor

13  issued a Decline to Prosecute Notice and sent a letter to Ms. Cousins informing her of the

14  decision.

15         Following the decision not to prosecute, the internal investigation recommenced.  Sgt.

16  Taylor was allowed to return to work on October 31, 2005.  On March 8, 2006 the County

17  learned that Sgt. Taylor had not turned over all of his weapons, as earlier ordered.  This led to a

18  second internal investigation and on March 31, 2006 Sgt. Taylor was advised of proposed

19  disciplinary action the County was considering taking, which action was officially announced on

20  April 21, 2006.  Sgt. Taylor was demoted to Correctional Officer and suspended from duty

21

22

23
          _____

24         [1] These facts are taken from the Final Decision and Order of the Administrative Law Judge which he
      entered following a hearing held on October 7 – 9, 2008, found at ECF No. 14-2, pages 4 – 7.  A copy of the Final
      Decision and Order was served on the parties on April 14, 2009.  ECF No.14-2. p. 20.

1   without pay for eight days.  He was ordered to limit any contact with Sgt. Cousins to contact

2   necessary to perform his on-duty responsibilities.

3         On March 13, 2006 the plaintiff voluntarily demoted from Sergeant to Corrections

4   Officer.  In her letter of resignation she stated she understood she would not be able to promote

5   to the rank of Sergeant in the future without retesting.

6         In late April 2006 Ms. Cousins wrote Chief Newlin several letters/memos expressing her

7   safety concerns about working with Mr. Taylor.  On May 10, 2006 she took a leave of absence

8   for medical reasons and was cleared to return to full duty as of July 1, 2006.

9         On July 11, 2006 Officers Cousins and Harrell wrote Prosecutor Hauge requesting he

10   reconsider his decision not to file charges against Mr. Taylor.  They also asked him to transfer

11   the filing decision to another county because of a perceived conflict of interest.  As a

12   consequence of this letter, Officers Cousins and Harrell met with Prosecutor Hague in late July

13   2006.  Prosecutor Hague, in his deposition, admitted to mentioning the whistleblower statute or

14   ordinance during that meeting but denied identifying the two officers as whistleblowers entitled

15   to protection.  Officer Penny Harrell's recollection is the same as Prosecutor Hague.  On the

16   other hand, Ms. Cousins contends that Mr. Hauge specifically told them he considered them

17   whistleblowers for reporting the Jeff Taylor incident.

18         On October 30, 2006 Officer Cousins requested reinstatement to Sergeant.  Under the

19   relevant civil service rule, the Corrections Division would have to join in the reinstatement

20   request.  Chief Newlin, in a November 30, 2006 letter, declined to support the request on the

21   grounds that when Ms. Cousins self-demoted she had agreed that she would have to retest for

22   Sergeant.

23         In late 2007 the County announced an opening for Corrections Lieutenant.  As noted

24   above, Ms. Cousins applied for the position twice and it was not offered to her.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
IN PART AND DENYING IN PART     8

1    Ms. Cousins filed a whistleblower complaint with the Kitsap County Board of

2    Commissioners in which she claimed that the failure to promote her to Corrections Lieutenant

3    was in retaliation for her reports regarding Sgt. Taylor. The Board of Commissioners denied her

4    complaint.  Ms. Cousins appealed the denial to the State of Washington Office of Administrative

5    Hearings.  The first full and complete administrative hearing was subsequently conducted by an

6    Administrative Law Judge on October 7 – 8, 2008.  The record contains a copy of the ALJ's

7    Final Decision and Order at ECF No. 14-2, pp. 2 – 20.

8         Undersheriff Bonneville and Chief Newlin testified, at the first administrative hearing,

9    that the reason Ms. Cousins was not offered the position had to do with her relatively low score,

10   her failure to satisfactorily address her voluntary self-demotion in 2006, and her lack of recent

11   command level experience.  Ms. Cousins testified that she felt she was denied promotion because

12   she made the complaint against Mr. Taylor in 2005 and that she was known to be unhappy with

13   the decision not to fire Mr. Taylor.

14        The ALJ concluded that the Kitsap County Ordinance 151-1993, as amended by Ord.

15   151-A, governed the proceedings as opposed to R.C.W. 42.41.  The ALJ found that the

16   "Ordinance and program it establishes meets the stated intent of the state local government

17   whistleblower act and therefore the county is exempt from its provisions, making the County

18   Ordinance the controlled regulation in this area."  ECF No. 14-2, p. 8.

19        While the ALJ found that the facts did not support a claim of improper governmental

20   action, due to the fact that at the time of the gun incident Sgt. Taylor was not performing his

21   official duties, he did proceed to analyze Ms. Cousin's claims on the assumption that there was,

22   in fact, improper governmental action.  The ALJ noted that Ms. Cousins bears the burden of

23   proving, by a preponderance of the evidence, "that a retaliatory action was taken against her

24   because of her good-faith report of improper governmental action and that she complied with the

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
IN PART AND DENYING IN PART        9

1    Ordinance's reporting requirements."  ECF No. 14-2, p. 9 – 10.  The ALJ found that the "stated

2    reasons for not selecting her for promotion were legitimate and not pretextual.  Ms. Cousins may

3    have concerns that the County had other reasons – improper reasons - for not selecting her as the

4    new Lieutenant.  However, my decision cannot be based on speculation and must be based on the

5    evidence presented at hearing, and that evidence does not support a determination that her denial

6    of promotion to Lieutenant was in retaliation against her for pursuing the Jeff Taylor complaint

7    in 2005 and 2006."  ECF No. 14-2, p. 10.

8          In her response, the Plaintiff asserts that the Defendants waived the affirmative defense of

9    collateral estoppel (issue preclusion) as it was not specified in the Answer.  The Defendants note

10   that they asserted the defense of estoppel in their answer and then immediately raised it more

11   specifically in this motion for summary judgment.  The Plaintiff has shown no prejudice to her,

12   even assuming that the defense was not more specifically asserted in the Answer, and the

13   undersigned finds that the affirmative defense was not waived.

14         The Plaintiff does seem to argue that because she had an administrative proceeding

15   pending simultaneously with this federal court case that the Defendants had an obligation to raise

16   an objection regarding the dual claims some time prior to this summary judgment motion and

17   their failure to do so should prevent them from pursuing the affirmative defense of collateral

18   estoppel.  The Plaintiff cited the case of *Clements v. Airport Authority of Washoe County,* 69

19   F.3d 321 (9th Cir. 1995) in support of that proposition.  However, *Clements* discussed the issue of

20   claim splitting and concluded, on the facts in that case, that claim preclusion could not be

21   asserted by the defendants.  The court in *Clements* did not reach the same conclusion regarding

22   issue preclusion, which is the affirmative defense raised by the defendants in this case.

23         "Collateral estoppel, or issue preclusion, bars relitigation of an issue in a subsequent

24   proceeding involving the same parties. (citations omitted)."  *Christensen v. Grant County*

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
IN PART AND DENYING IN PART        10

*Hospital District No. 1,* 152 Wash.2d 299, 306, 96 P.3d 957 (1004).   It is distinguished from

claim preclusion (also called res judicata), "in that, instead of preventing a second assertion of

the same claim or cause of action, it prevents a second litigation of *issues* between the parties,

even though a different claim or cause of action is asserted." *Rains v. State,* 100 Wash.2d 660,

665, 674 P.2d 165 (1983).

> Collateral estoppel may be applied to preclude only those issues that have actually
> been litigated and necessarily and finally determined in the earlier proceeding.
> (citation omitted).  Further, the party against whom the doctrine is asserted must
> have had a full and fair opportunity to litigate the issue in the earlier proceeding.
> *Nielson v. Spanaway Gen. Med. Clinic. Inc.,* 135 Wash.2d 255, 264-65, 956 P2d
> 312 (1998).  For collateral estoppel to apply, the party seeking application of the
> doctrine must establish that (1) the issue decided in the earlier proceeding was
> identical to the issue presented in the later proceeding, (2) the earlier proceeding
> ended in a judgment on the merits, (3) the party against whom collateral
> estoppel is asserted was a party to, or in privity with a party to, the earlier
> proceeding, and (4) application of collateral estoppel does not work an injustice
> on the party against whom it is applied.  (citations omitted).

*Christensen, supra,* at p. 307.

The fact that the issues were decided by an ALJ in an administrative hearing does not

prevent application of collateral estoppel.  "Both state and federal courts have applied collateral

estoppel where an issue was adjudicated by an administrative agency in the earlier proceeding."

*Christensen, supra,* at p. 307.

An analysis of the factors identified in *Christensen, supra,* supports the conclusion that

collateral estoppel applies to the facts of this case.  First, the Plaintiff does not dispute that the

issue decided in the earlier administrative proceeding was identical to that presented in the later

proceeding.  In the administrative proceeding, Ms. Cousins claimed that she was not promoted to

Lieutenant in retaliation for reporting improper local governmental action which related to the

incident involving Sgt. Taylor.  Ms. Cousins makes the same claim in this litigation.   The issue

of retaliation was decided against Ms. Cousins in the administrative hearing.  The ALJ made the

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
IN PART AND DENYING IN PART       11

1   specific finding that the "evidence does not support a determination that her denial of promotion

2   to Lieutenant was in retaliation against her for pursuing the Jeff Taylor complaint in 2005 and

3   2006." ECF No. 14-2, p. 10.

4          Second, the administrative hearing ended with a judgment on the merits (*See* Final

5   Decision and Order, ECF No. 14-2, pp. 2 – 20.).  Ms. Cousins did file an appeal to the Superior

6   Court regarding the ALJ's decision but, for various reasons, that appeal has not been perfected.

7   However, an appeal does not suspend or negate the collateral estoppel aspects of a judgment or

8   administrative order.  Therefore, the status of the "appeal" has no impact on the finality of the

9   judgment.  *Nielson v. Spanaway General Medical Clinic, Inc.,* 135 Wash.2d 255, 264, 956 P.3d

10  957 (1998).

11         Third, Ms. Cousins was clearly a party in the administrative hearing.

12         Fourth, application of collateral estoppel will not work an injustice on Ms. Cousins.

13  "In determining whether application of the doctrine of collateral estoppel would work an

14  injustice, we focus on whether the parties to the earlier adjudication were afforded a full and fair

15  opportunity to litigate their claim in a neutral forum.  *Rains,* 100 Wash. 2d at 666, 674 P.2d 165;

16  *Neff v. Allstate Ins. Co.,* 70 Wash.App. 796, 801, 855 P.2d 1223 (1993)." *Nielson, Id at* p. 264.

17  Ms. Cousins has not provided any facts that to show that she was not provided a full and fair

18  opportunity to litigate her claim in the administrative arena nor has she provided any facts to

19  show that the administrative hearing was not a neutral forum.  The Court notes that Ms. Cousins

20  makes conclusory statements in her declaration regarding the conduct of discovery as well as

21  conduct of the hearing.  She does not, however, provide any facts that support her assertions.

22         Ms. Cousins does assert that the difference in remedy available through the

23  administrative hearing as opposed to this civil litigation would work an injustice.  She argues that

24  she only had a prospective injunctive remedy available to her in the administrative hearing and

1    could not recover back pay, which would be available in civil litigation.  However, as noted

2    above, the concern regarding the issue of injustice focuses on "a full and fair opportunity to

3    litigate their claim in a neutral forum."  *Nielson, Id.*  Ms. Cousins has a full and fair opportunity

4    to litigate her claim and she did so.

5         In addition to the four *Christensen* factors,  "[t]hree additional factors must be considered

6    under Washington law before collateral estoppel may be applied to agency findings: (1) whether

7    the agency acted within it competence, (2) the differences between procedures in the

8    administrative proceeding and court procedures, and (3) public policy considerations.  *Reninger,*

9    134 Wash.2d 450, 951 P.2d 782; *Shoemaker,* 109 Wash.2d 508, 745 P.2d 858; *State v. Dupard,*

10   93 Wash.2d 268, 609 P.2d 961 (1980)."  *Christensen, supra,* at p. 308.

11        With regard to the first additional factor, the plaintiff does not assert that the agency acted

12   outside its competence.

13        The second *Reninger* factor focuses on the differences between an administrative

14   proceeding and court procedures.  In this case, no facts have been presented which would lead to

15   the conclusion that the differences, if any, argue against the application of collateral estoppel.  It

16   is undisputed that a qualified administrative law judge conducted the hearing, held a prehearing

17   conference, identified the issues to be resolved at the hearing, presided over a two day hearing in

18   which the plaintiff attended in person, heard testimony of several witnesses and admitted 99

19   exhibits into the record.  This second factor supports the application of collateral estoppel.

20        With regard to the third *Reninger* factor, Ms. Cousins does assert that the difference in

21   relief available through the administrative hearing compared to court procedures argues against

22   the application of collateral estoppel.

23        Disparity of relief between what one can recover in the first action compared
         to what one can recover in the second action is not the gravamen of the decision

24       whether to apply collateral estoppel to the findings of an administrative board.

1

2
> Rather, courts look to disparity of relief to determine whether sufficient incentive existed for the concerned party to litigate vigorously in the administrative hearing. Courts have reasoned that if the amount a party can recover in an administrative proceeding is insignificant, the party is not likely to have litigated the crucial issues vigorously and it would be unfair to employ collateral estoppel against that party in future proceedings to prevent the relitigation of those same issues in another forum.

3

4

5

6
*Reninger v. Department of Corrections,* 134 Wash.2d 437, 453, 951 P.2d 782 (1998).  Ms.

7
Cousins asserts that the remedy available through the administrative hearing was limited to

8
injunctive relief, costs and attorneys fees.  She asserts that promotion and back pay was never

9
possible.  However, the Court notes that the parties agreed an issue for determination by the ALJ

10
was "[w]hether promotion to corrections lieutenant is an appropriate remedy."  ECF No. 14-2, p.

11
3.  While the remedy may be different, there is no dispute that Ms. Cousins vigorously litigated

12
her claim before the ALJ.  She participated in a prehearing telephone conference, developed a

13
discovery plan with opposing counsel, attended a two day hearing and had forty-two exhibits

14
admitted into the record.   The Court , therefore, concludes that the application of collateral

15
estoppel is appropriate which then requires dismissal of Claims II and III.

16
   Ms. Cousins also alleges that Chief Newlin released her identity as a whistleblower to

17
several county employees "in retaliation to create unnecessary hostile employee relations for

18
me."  ECR No. 21, p. 15.  She also accuses Burt Furuta, Kitsap County Personnel Director, of

19
the same conduct.  The Court notes, however, that Mr. Furuta is not a party to this litigation.  Ms.

20
Cousins' allegation is somewhat confusing as she claims her identity was released on "07

21
October 2008" yet cites to a letter written to her dated July 16, 2008.  The County employees she

22
references are Undersheriff Dennis Bonneville, who already knew about the whistleblower

23
complaint and who testified at the first administrative hearing; Deborah Boe a Deputy

24
Prosecuting Attorney in the Prosecuting Attorney's Office; Lt. Roxane Payne, who already knew

1    about the whistleblower complaint (see Final Decision and Order, ECF No. 14-2, p. 26) and Sgt.

2    Keith Hall, who also already knew about the initial whistleblower complaint.

3         Ms. Cousins filed four additional whistleblower complaints[2] against the Kitsap County

4    Sheriff's Office, one of which reasserted the claim of retaliation which is also being made in this

5    litigation.  The complaints were denied by the Board of County Commissioners and Ms. Cousins

6    appealed the denial to the Office of Administrative Hearings.  As was done with regard to the

7    first hearing, the parties exchanged discovery, a hearing was held on Jun 21 – 23, 2009 before an

8    Administrative Law Judge, testimony presented, exhibits admitted and post –hearing briefs filed

9    and on October 2, 2009 the ALJ issued a Final Decision and Order (ECF No. 14-2, p. 22 – 48).

10        Complaint No. 1, dated August 20, 2008, is the only complaint that alleged retaliation.

11   This complaint related to the same July 16, 2008 letter that is complained of  in Ms. Cousins'

12   declaration.  ECF No. 21, p. 15.   Ms. Cousins asserted that the letter was a reprimand issued in

13   retaliation for making the whistleblower complaints that alleged improper government activity

14   by Sgt. Hall, Chief Newlin, Undersecretary Bonneville and Kitsap County Sheriff Stephen A.

15   Boyer.   In the Final Decision and Order, the ALJ concluded:

16       16.  There is sufficient evidence to find, to a preponderance of evidence standard,
         that the letters dated July 16 and July 22, 2008 were intended by Chief Newlin
17       to clarify the use of county facilities and equipment for personal use and to state,
         from Chief Newlin's understanding based on the Human Resource Director's e-mail,
18       that Whistle Blower activity was a personal matter for which annual leave or
         comp time could be approved, but paid release time could not be authorized.
19
20       17.  The facts establish, to a preponderance of the evidence standard, that Ms.
         Cousins's working conditions were unchanged and no chain-of-command or other
21       employees were encouraged or led to believe that Ms. Cousins should be treated
         in a negative or less than professional manner, nor was any action taken by persons
22       other than Chief Newlin that could reasonably be construed as encouraging any
         negative or hostile action towards Ms. Cousins.

23   _____

24   [2]Complaint No. 1 dated August 20, 2008; Complaint No. 2 dated October 16, 2008; Complaint No. 3 dated October
     15, 2008; and Complaint No. 4 dated October 20, 2008.

     ORDER GRANTING DEFENDANTS'
     MOTION FOR SUMMARY JUDGMENT
     IN PART AND DENYING IN PART        15

1

2    ECF No. 14-2, p. 33 – 34.  The ALJ went on to reiterate that after July 15, 2008, there was "no

3    adverse change in Ms. Cousins' employment status, terms and conditions of employment, or any

4    change in her duties, working environment and work assigned.  There is no evidence to support a

5    finding that hostile actions were encouraged by any chain-of-command supervisor."  ECF No.

6    14-2, p. 44.

7          With regard to Chief Newlin's July 16, 2008 letter, the ALJ concluded that "informing

8    Ms. Cousins that her Whistleblower activity was a personal matter and directing her to take

9    personal leave were not acts of retaliation."  ECF No. 14-2, p. 46.  He concluded by making a

10   finding that Ms. Cousins "hasn't met her burden to prove retaliation."  ECF No. 14-2, p. 46.

11         The undersigned also notes that Ms. Cousins has not shown, by any admissible facts, that

12   the July 16, 2008 letter identified her as a whistleblower to employees who did not already have

13   that knowledge.  Therefore, sending a copy of the letter to those individuals, who already have

14   knowledge, cannot support an allegation of retaliation.   Finally, the ALJ made clear findings that

15   her working conditions did not change in any fashion following the date of that letter.

16         The three other complaints were not filed as claims of retaliation and were found, by the

17   ALJ, to not allege improper governmental action.  Those complaints are not part of this

18   litigation.

19         The undersigned concludes that collateral estoppel applies Ms. Cousin's claims related to

20   Sheriff Newlin and the July 16, 2008 letter for the same reasons discussed above.  In addition,

21   Ms. Cousins has presented no facts to support her assertion that Sheriff Newlin released her

22   identity as a whistleblower to other county employees who did not know of her whistleblower

23   complaint and she cannot therefore factually support any claim of retaliation or violation of any

24   first amendment rights relating to the July 16, 2008 letter.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
IN PART AND DENYING IN PART       16

1     For the reasons stated, the defendants' motion to dismiss Claims II and III is

2  **GRANTED.**.

3                  **Claim IV:  Retaliation for Filing an EEOC Claim**

4     In her fourth claim for relief, Ms. Cousins alleges that the defendants retaliated against

5  her for filing an EEOC claim against them.  The only claim that was actually filed against the

6  defendants is contained in the Notice of Charge of Discrimination dated April 9, 2008 which

7  alleged sex discrimination under Title VII.  ECF No. 16-2, p. 10.  Attached to the Notice of

8  Charge of Discrimination was a Washington State Human Rights Commission Complaint signed

9  by Terry Cousins on April 6, 2008. ECF No. 16-2, p. 11.  Ms. Cousins' Complaint was with

10 regard to the denial of a promotion to the Lieutenant position on March 18, 2008.  She

11 specifically stated that she believed she was denied the "promotional opportunity and

12 discriminated against because of my sex."  *Id.*  She did not file any other complaint with the

13 EEOC after April 6, 2008.

14    The basis of Ms. Cousins' claim is that she was not promoted to the Corrections

15 Lieutenant position in August 2008 because she filed the April 2008 EEOC charge.  Thus, the

16 date she was discriminated against, based on her assertions, was on August 11, 2008, the date

17 that the position was filled by Genie Elton.

18    As a prerequisite to filing suit, a Title VII complainant must file a charge of

19 discrimination with the EEOC with either within 180 days or 300 days after the alleged unlawful

20 employment practice occurred.  *See* 42 U.S.C. § 20003-5(e)(1).  Exhaustion of administrative

21 remedies is a clear requirement for bringing a suit under Title VII.  "Each discrete discriminatory

22 act starts a new clock for filing charges alleging that act.  The charge, therefore, must be filed

23 within the 180- or 300-day time period after the discrete discriminatory act occurred." *National*

24 *R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
IN PART AND DENYING IN PART          17

1  Ms. Cousins failed to file the required claim with the EEOC and her fourth claim must therefore

2  be dismissed.

3  **CONCLUSION**

4       For the above stated reasons, the Court is **GRANTING** the Defendants' motion to

5  dismiss (ECF No. 14) all of the plaintiff's claims with the exception of her Claim I of gender

6  discrimination for failure to promote to the Lieutenant position in March 2008.

7       DATED this 29th day of December, 2010.

8

9

10

Karen L. Strombom
11  United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24